PEOPLE OF THE STATE OF NEW YORK ex rel. KANNENSOHN HOLDING CORPORATION, Relator, *v.* WILLIAM E. WALSH and Others, Constituting the Board of Appeals of the City of New York, Respondents.

Supreme Court, Kings County, March, 1923.

Certiorari — building zone resolution — New York city — erroneous decision of board of appeals — return must show grounds of decision.

Relator's application for the erection of a garage for more than five motor cars partly in a business district and partly in an unrestricted district in the borough of Brooklyn was denied by the superintendent of buildings. The property

**468** People ex rel. Kannensohn Holding Corp. *v.* Walsh.

Supreme Court, March, 1923. [Vol. 120

in question is on a short street occupied entirely by garages except two corner buildings fronting on another street. Upon appeal to the board of standards and appeals the decision of the superintendent of buildings was affirmed and the application denied. The petition for a writ of certiorari to review the action of the board specifies in what respects the action of the board was erroneous, illegal and biased, and claims that the board exceeded its power and jurisdiction. The return to the writ sets forth the minutes of the proceedings before the board and as its decision a resolution which failed to show that it decided the appeal for any apparently good reason. *Held*, that the return did not set forth such facts as were pertinent and material to show the grounds of the decision as required by the statute; that the decision was contrary to the weight of evidence and illegal. Writ sustained and the determination of the board reversed and the permit applied for ordered issued.

Certiorari to review action of board of appeals.

*Israel H. Perskin* (*Abel E. Blackmar*, of counsel), for relator.

*George P. Nicholson*, corporation counsel (*William T. Kennedy*, of counsel), for respondent.

Faber, J. This is a certiorari to review the action of the board of appeals in denying relator's application, under the so-called building zone resolution, to permit, partly in a business district and partly in an unrestricted district, the erection and maintenance of a garage for the storage of more than five motor vehicles. The property in question is known as Nos. 15–27 Bedford place. Bedford place runs from Brevoort place to Atlantic avenue, is a short street 250 or 300 feet in length, and is entirely occupied by garages except the corners of Brevoort and Bedford places, which are occupied, one by a dwelling and the other by a library building, both fronting on Brevoort place, and extending back on Bedford place 100 and 125 feet, respectively. The block in which the property involved is located is bounded on the east by Bedford avenue, on the south by Atlantic avenue, on the west by Bedford place, and on the north by Brevoort place. Atlantic avenue is in an unrestricted area, and Bedford avenue, Bedford and Brevoort places are in business districts. The proposed garage is partially upon the unrestricted Atlantic avenue zone, but mostly within the business zone. Relator's property has a frontage of 113 feet and a depth of 176 feet. The relator also owns the property immediately adjacent, facing on Bedford avenue, and known as No. 1288 Bedford avenue, which is unrestricted. The relator has erected a building extending from Bedford avenue to Bedford place, and has rented the Bedford avenue frontage for an automobile show room. The extension to the rear and fronting on Bedford place is the part proposed to be used as a garage and which is in controversy here. This building will have an entrance

on Bedford place. Such entrance is not near Brevoort place. Directly opposite the proposed extension is a public garage, and adjoining it is a garage service station.

On April 14, 1922, the relator filed with the bureau of buildings an application to permit the extension in area of the existing show rooms, so as to include a garage in the rear of the said show rooms and to be connected therewith on the said premises Nos. 15–27 Bedford place. On April 18, 1922, such application was denied by the superintendent of buildings in the following memorandum: " Denied. Proposition contrary to Building Zone Resolution.— Article 2, Section 4." The relator then appealed from such decision of the building superintendent to the board of standards and appeals. During the hearings on this appeal a committee of inspection of that board was appointed to visit the premises in question and report thereon. The committee consisted of five of the seven members of the board. Subsequently the committee filed its report (two of its members dissenting) in which it referred to a visit to the property, and, after describing the property and its surroundings, concluded by saying: " The expression of the Committee as to disapproval of this appeal was for the reason that the building was and is being erected on the presumption of a disregard for the Building Zone Resolution, and the Committee therefore recommend denial of this appeal." It may be noted that the three members reporting are a minority of the full board of appeals. Thereafter and on November 14, 1922, the matter was before the board for final determination, and it was " *Resolved,* that the decision of the superintendent of buildings be and it hereby is affirmed and the application be and it hereby is denied." It is the propriety of this decision which is sought to be reviewed by the writ of certiorari. The application to the board, though called an appeal, is not strictly such, but is a matter of its original jurisdiction. The superintendent of buildings had no power to " vary " the application of the Building Zone Resolution and his function ceased when he denied the permit for the erection or extension in question, assigning as a reason, complete in itself and conclusive upon him, that it was " contrary to the zoning resolution." This was all he could do under the circumstances. He could not grant the permit applied for when he knew the erection or extension of the building would be in violation of the Building Zone Resolution. Thereafter jurisdiction to " vary " was solely in the board of appeals under sections 7 and 20 of the Building Zone Resolution, and section 719 of chapter 503 of the Laws of 1916. Under the last named section it has been held that the board cannot disregard the provisions of the statute. *People ex rel. Cockcroft* v. *Miller,* 187 App.

470   People ex rel. Kannensohn Holding Corp. v. Walsh.

Supreme Court, March, 1923.                    [Vol. 120

Div. 704.   And the Building Zone Resolutions have the force and effect of the statute.   *Matter of Stubbe* v. *Adamson*, 220 N. Y. 459, 465.   " Ordinarily, therefore, what the board of appeals would have to decide would be, whether there are practical difficulties or unnecessary hardship in carrying out the strict letter of the law which would justify it in varying the law."   *People ex rel. Cockcroft* v. *Miller, supra,* 709.   In seeking to review the decision of the board, the petition for the writ must set forth that such decision " is illegal, in whole or in part, specifying the grounds of the illegality." Laws of 1916, chap. 503, § 719-a, subd. 1.   The petition herein does that, specifying in what respects it is claimed that the action of the board was erroneous, illegal, biased, created undue hardship, discriminatory and prejudicial, an abuse of its discretion wholly impracticable, unjust and improper, and that the board exceeded the power, authority and jurisdiction.   The return to the writ is required by the statute (§ 719-a, subd. 3) to be more than a general denial of the petition.   *It must concisely set forth such other facts as may be pertinent and material to show the grounds of the decision.*   The return in this case sets forth the minutes of the proceedings before the board, and, as its decision, the following resolution.

" Whereas, R. Thomas Short, for Clark-Johnson Company, owner, filed June 30, 1922, an application under the building zone resolution, to permit partly in a business district and partly in an unrestricted district the erection and maintenance of a garage for the storage of more than five motor vehicles, premises 15–27 Bedford Place, Brooklyn; and

" Whereas, a public hearing was held on this application by the board of appeals at its regular meeting November 14, 1922, after due notice by publication in the Bulletin of the Board of Standards and Appeals; and

" Whereas, the use district maps accompanying the building zone resolution show that Bedford Place is a business district, Atlantic Avenue is an unrestricted district and Brevoort Place is a business district; and

" Whereas, the decision of the superintendent of buildings, rendered April 18, 1922, reads: ' Denied.   Proposition contrary to Zone Resolution, Art. II, Sec. 4 '; and

" Whereas, the proposed building is to be of non-fireproof construction, 1 story in height with a frontage of 113 ft. and a depth of 176 ft., to be occupied as a garage for more than 5 motor vehicles; and

" Whereas, there was opposition to the granting of this application on the part of neighboring property owners and a committee

of the board inspected the premises and recommended the denial of the application;

" *Resolved,* that the decision of the superintendent of buildings be and it hereby is *affirmed* and the application be and it hereby is denied."

This decision does not appear to be in proper form, nor of proper effect. The law prescribes that " Each decision shall so far as is practicable be in the form of a general statement or resolution which shall be applicable to cases similar to or falling within the principles passed upon in such decision." Laws of 1916, chap. 503, § 719, subd. 5. The only concrete ground discernible in this decision is that the committee " inspected the premises and recommend a denial of the application." There is no direct reference to the " reason " given by the committee for its recommendation (*i. e.,* that the building was being erected on the presumption of a disregard of the Building Zone Resolution) which reason is not unfairly criticised by the relator's counsel, as showing a purpose " * * * to punish * * * for a purely imaginary violation of the courtesy, which the board claimed should be exercised toward it." If it may be thought that the reason was adopted along with the recommendation of the committee, and controllingly influenced the decision, as it is argued, there would not be a proper exercise of the discretion in the board, for punctilio would have taken the place of judgment. 18 C. J. 1138. But whether or not this reason was adopted, it is clear that none of the recited " Whereases " of the decision touch upon or deal with, even impliedly, the question of " practical difficulties and unnecessary hardship," and it does not appear from the return that such question was decided. A refusal to " vary " without a determination of that primary and necessary question is at least an illegal disposition. The corporation counsel urges that the judgment and discretion of the board of appeals should not be disturbed, as the rulings of the board are presumptively correct. If among the grounds of the decision appearing from the return there was something to show that the board of appeals had actually decided the primary question before it, whether there were no practical difficulties or unnecessary hardship in carrying out the strict letter of the law which would justify it in varying the law (*People ex rel. Cockcroft* v. *Miller, supra; People ex rel. McAvoy* v. *Leo,* 109 Misc. Rep. 255, 257), the rule of the presumptive correctness of the decision as declared in the cases cited by the corporation counsel would apply. Taking as typical of such cases the latest one (*People ex rel. Sheldon* v. *Board of Appeals,* 234 N. Y. 484, 489, 494), it expressly appeared in the resolution of decision that the question of unnecessary hardship was directly determined.

In the present case that does not appear at all. There thus appears to have been an arbitrary exercise of discretion — that is, one which discriminates between those similarly situated. *Birmingham Ry., Light & Power Co.* v. *Kyser*, 203 Ala. 121. I find that there has been the discrimination charged, and that such is illegal, within the purview of the law. To deny the relator a use of its lands like that its neighbors have, and which will not appreciably add to any discomfort to others, certainly puts upon the relator the burden of the unnecessary hardship which in truth was sufficient to grant it the variance asked.

The board having failed by its return to show that it decided the appeal, for that, or any apparently good reason, the matter is before me, on the merits, appearing on the evidence before the board and certain new evidence before me. The latter includes a photograph of a large public garage immediately opposite relator's site. Among the petitioner's specifications of illegality is the ground that there was an unjust discrimination against the relator, in that " a similar application for a garage purpose on the very same street " has been granted. It does not appear from the return that there was no such discrimination — indeed the return admits that Bedford place " is entirely occupied by garages at present," and there is no reason assigned in the return, or suggested, why leave of like use as that immediately opposite should be denied relator.

The decision reached is, in my opinion, contrary to the weight of the evidence, and " illegal." The writ should be sustained, the determination of the board reversed, and the permit applied for ordered issued. As the action of the board may not have been in bad faith, costs are not allowed.

Judgment accordingly.