In the Matter of the Application of ESDORA REALTY CORPORATION, Petitioner, for an Order of Certiorari against WILLIAM E. WALSH and Others, Constituting the Board of Standards and Appeals, and Another, Defendants.*

Supreme Court, Bronx County, March 19, 1930.

* Revd., 229 App. Div. 866.

*Platt & Friedman*, for the petitioner.

*William P. Thomas*, for the intervening defendants.

*Arthur W. Hilly*, for William E. Walsh, defendant.

CALLAHAN, J. This is a certiorari proceeding to review a determination of the board of standards and appeals granting a permit for the erection and maintenance of a garage on premises 2334–2360 Jerome avenue, in the borough of The Bronx, city of New York.

The premises have a frontage of 274 feet on Jerome avenue. Part of the same premises has heretofore been the subject of several applications for variation of use before the board of standards and appeals. The prior applications were denied and the denials were eventually affirmed by the courts of this State. (*People ex rel. Werner* v. *Walsh*, 212 App. Div. 635; affd., 240 N. Y. 689; *People ex rel. Falkenau & Hammershlag, Inc.*, v. *Walsh*, Id. 688, affg. 214 App. Div. 705.) Among the grounds urged by the petitioner to set aside the determination of the board of standards and appeals is that the said board is without jurisdiction to entertain the application in view of the prior denials. Without reviewing the contentions in detail, this claim may be disposed of by the statement that the present application appears to have been granted under section 7, subdivision g, of the Amended Building Zone Resolution in that the property owner claimed to have filed the consents of adjoining owners required by that subdivision. None of the prior proceedings appear to have been decided after the production of such consents. This proceeding is, therefore, clearly one brought on a different basis than those heretofore decided and the board had jurisdiction to entertain it.

There are numerous other objections to the determination of the board, only one of which, however, it will be necessary to consider as the others are either untenable or were not raised before the board of standards and appeals and relate solely to incidents of procedure which should have been raised there.

The doubtful question is whether or not the defendant owner sufficiently complied with section 7, subdivision g, of the Amended Building Zone Resolution, and whether the board acted under section 21 thereof herein, and if it did whether it properly did so. The application stated that it was based on sections 7, subdivision g, and 21 of the Building Zone Resolution.

As was said in *Matter of Sloane* v. *Walsh* (245 N. Y. 208, at p. 213) the decision of the board of standards and appeals is required to be in writing and where by law an act is required to be done in writing the nature of it must be judged by the writing alone. We are, therefore, referred to the resolution adopted by the board herein in order to ascertain on what ground the board acted. The resolution recites the following:

" WHEREAS, the board deemed that applicant has substantially in spirit and intent complied with the requirements of section 7, subdivision g, in that he has filed 73 per cent consents of property owners immediately affected, and is estopped from complying with the strict letter of the law for the reason that the owners of three garages on the same street front, between the same intersecting streets, have refused to give their consents in fear of competition, and other owners, who, although having no objection, would give their consents only on a monetary consideration; and

" WHEREAS, the board deems, in view of these facts, which have been sworn to under oath during testimony before the board, that the applicant has complied with the spirit and intent of the law and is, therefore, entitled to consideration under section 21, in that denial of this application would be arbitrary discrimination on the part of the board.

" *Resolved,* that the board of standards and appeals does hereby make a variation in the application of the use district regulations of the building zone resolution," etc.

Section 7, subdivision g, of the Amended Building Zone Resolution provides that the board may: " (g) Permit in a business or residence district the erection of a garage provided the petitioner files the consents duly acknowledged of the owners of 80 per cent. of the frontage *deemed* by the Board to be immediately affected by the *proposed garage.*"

Section 21 of the Amended Building Zone Resolution provides as follows: " Where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of the provisions of this resolution the Board of Appeals shall have power in a specific case to vary any such provision in harmony with its general purpose and intent, so that the public health, safety and general welfare may be secured and substantial justice done."

The resolution adopted herein clearly shows that the only question of practical difficulty or unnecessary hardship involved in the present proceeding was the alleged difficulty and hardship in the obtaining of the eighty per cent of consents required by subdivision g of section 7 of the Amended Building Zone Resolution. The consents filed constituted seventy-three per cent of the property

within the zone fixed by the board. Adding to such consents the parcels in the zone that were occupied as public garages the total would be eighty-seven and one-half per cent, or, entirely eliminating the garages from consideration, the consents obtained would have exceeded eighty-seven and one-half per cent of the remaining property affected. There were several other parcels affected concerning which testimony was given that demands were made upon the applicant for monetary considerations for obtaining the consents. For the present the consideration of the questions concerning these parcels will be eliminated.

If section 21 of the Amended Building Zone Resolution is broad enough to permit the board to vary the strict letter of the requirement of eighty per cent and to accept seventy-three per cent consents as a compliance with section 7, subdivision g, the determination here must be sustained as this record justifies the finding by the board that there were practical difficulties and unnecessary hardships in obtaining the remaining seven per cent. As a practical matter, it appears to me that the board might have avoided the question now under discussion by entirely eliminating existing public garages when it fixed the zone affected. Such garages could only be adversely affected by competition. That is not the sense in which the term " affected " is used in the resolution. That practical difficulties might exist in obtaining consents of competitors requires no argument. The language of section 21 is sufficiently broad to grant the board the right to not only vary those provisions of the Amended Building Zone Resolution with respect to the use to which property may be put but to vary the strict letter of the provisions of the resolution with respect to manner of obtaining variations such as on consents, etc. Whether this power was properly exercised herein is the sole remaining question. As was said in *People ex rel. Cotton* v. *Leo* (110 Misc. 519): " The board cannot wholly disregard the provisions of the statute or of the regulations. It can merely ' vary ' them to do ' substantial justice,' when the ' strict letter ' of the provisions would work hardships." The petitioner herein discusses the wisdom of giving the board discretionary power to vary the " strict letter " of the law. The answer is that this question is one for the legislative body to determine and it has seen fit to grant such discretion. The duty of the courts is merely to see that the discretion is not abused. It does not appear to have been the subject of abuse in this case. Each case must be determined on its own facts.

The reason for varying the strict letter of the provisions of the resolution and the extent to which it was varied would be the important factors in each case. Satisfactory proof of the existence

of unnecessary hardship or practical difficulty would have to be apparent to the court in order to justify it in upholding the action of the board changing the percentage fixed by law as to the quantity of the consents required. The present record appears to satisfactorily meet that scrutiny. If the basis for variation under section 21 herein was solely the alleged demand by certain property owners for monetary compensation for consents I would not approve of the action of the board in varying the requirement for eighty per cent. Such a demand would have to be clearly shown to be a wrongful one. A property owner might feel his property would be damaged by the change of use proposed and an agreement to accept compensation for such damage would be within his rights. The method of proving the alleged demands for money in the present case was far from convincing. It may be well to note that the extent of the variation should do no more than change the " strict letter " of the law. The board would not appear to have the right to reduce the quantity of the consents needed by any considerable percentage even where hardship or difficulty might arise as to those not procured. The legislative fiat contained in section 7, subdivision g, is eighty per cent with a power in the administrative body to vary the " strict letter " of this provision where the other elements specified in the section appear. The board could not vary even the slightest fraction of the required percent in an application under section 7, subdivision g, unless the hardship or difficulty required by section 21 is shown and the change is made for a proper purpose and to secure substantial justice. With these rules of construction in mind it appears that the board properly exercised its powers in the instant case.

The petition is dismissed and the determination of the board sustained. Submit order.